IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA :
:
:
v. : CASE NO.: CR207-06
:
:
KRISTEN NICOLE NOBLES :

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Kristen Nicole Nobles ("Nobles") is charged with committing bank fraud, in violation of 18 U.S.C. § 1344. Williams filed a Motion to Exclude Statements and a Motion for a <u>Jackson-Denno</u> hearing. The undersigned conducted an evidentiary hearing concerning these matters on March 20, 2007, at which Special Agent Mark Anthony Alig ("Alig" or "Agent Alig") with the Federal Bureau of Investigation and Nobles testified. The Defendant and the Government have filed post hearing briefs.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

Officials with the executive staff of Ameris Bank contacted Agent Alig on January 2, 2007. These officials informed Agent Alig of a loss of approximately $33,500, which was discovered through an internal bank audit and believed to be the result of employee theft. Alig contacted Nobles and asked her if she was willing to come to his office for an interview; Nobles came to Alig's office the next day. Alig and Nobles sat down in the conference room, kept the door opened, and Alig told Nobles he appreciated her

coming in voluntarily. Agent Alig informed Nobles she was not under arrest and could leave at any time. Nobles agreed to answer Alig's questions. At the end of the interview, Agent Alig thanked Nobles for cooperating with him and asked her if he could ask her additional questions, if necessary. Nobles told Alig he could and left the building.

Agent Alig interviewed Nobles a second time that same day after he received more information. Alig testified he reviewed this information with Nobles. Nobles began making admissions to Alig that she was responsible for stealing money from Ameris Bank, although she was "resistant" to admit to stealing the entire $33,500. (Tr. at 9.) Nobles gave Agent Alig permission to call her parents, and her father came to Alig's office. Agent Alig prepared a statement detailing Nobles' admissions, which she and her father reviewed and signed. Agent Alig thanked Nobles' for coming to speak with him. Nobles and her father left Alig's office.

Nobles contends she was not given her Miranda warnings prior to speaking with Agent Alig and that her confession was given involuntarily.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Nobles' Assertion That her Statements Should be Suppressed.**

"No person . . . shall be compelled in any criminal case to be a witness against [her]self[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards[1] effective to secure the

---

[1] "Prior to any questioning, the person must be warned that [s]he has a right to remain silent, that any statement [s]he does make may be used as evidence against [her], and that [s]he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.

AO 72A
(Rev. 8/82)

2

privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430, 104 S. Ct. 1136, 1144, 79 L. Ed. 2d 409 (1984)). An objective, reasonable person test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation." Id. at 1360. In other words, the inquiry is whether "a reasonable [person] in the suspect's position would feel a restraint on [her] freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that [s]he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430, 104 S. Ct. at 1145-46).

The evidence before the Court reveals Nobles was not in custody or under arrest on either occasion she spoke with Alig; accordingly, it was not necessary for Agent Alig to have advised her of her Miranda rights. Agent Alig identified himself to Nobles on the telephone when he initially contacted her about this case. Agent Alig also identified himself to Nobles when she came to his office on the first occasion and showed her his credentials. Agent Alig and Nobles sat in the conference room, along with Agent David Crisafi, and the door to the conference room was opened the entire time. Agent Alig thanked Nobles for agreeing to speak voluntarily with him. Alig informed Nobles she

was not under arrest and could leave at any time. Nobles did not seek Alig's permission on either occasion to leave the building. In fact, Alig never told or indicated to Nobles she could not leave. Nobles was very cooperative with Agent Alig during both interviews. The evidence of record indicates Nobles has a high school education, is able to read and write the English language, was not under the influence of alcohol or other drugs, and was not under a doctor's care.

The undersigned recognizes Nobles' assertion that she did not understand she could refuse to speak with Agent Alig because she thought she had to do what he asked because he is with the FBI. However, Nobles' assertion is undermined by her admissions that she: was never told she had to meet with Agent Alig, was informed that at least the second meeting was voluntary, volunteered to meet with Agent Alig the second time on the same day, realized she was not under arrest, and was not restrained during these meetings. (Tr. at 22-23.) Nobles' statements are not subject to suppression on this basis.

## II. The Voluntariness of Nobles' Confession.

The United States Supreme Court's holding in <u>Jackson v. Denno</u>, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), governs the voluntariness of confessions, and in pertinent part provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if [her] conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376, 84 S. Ct. at 1780 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause when law enforcement officials have

used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S. Ct. 274, 279, 4 L. Ed. 2d 242 (1960); Chambers v. Florida, 309 U.S. 227, 237, 60 S. Ct. 472, 477, 84 L. Ed. 716 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." Blackburn, 361 U.S. at 206, 80 S. Ct. at 280 (citing Fikes v. Alabama, 352 U.S. 191, 197, 77 S. Ct. 281, 284, 1 L. Ed. 2d 246 (1957). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005). Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 1296.

The totality of the circumstances in the instant case reveals Nobles' confession to Alig was not obtained as a result of coercion and was voluntarily given. Specifically, Agent Alig testified he did not make any promise to Nobles in exchange for her making a statement. Alig informed Nobles he was investigating the matter to determine who was responsible for the theft and whether more than one person was involved in the theft. Alig testified he did not coerce Nobles into making a statement by threatening her with words or actions. During the second interview, Alig reviewed with Nobles the information he received after their first interview, and Nobles "began to make a number of admissions that she was responsible for stealing money from the bank." (Tr. at 9.)

Alig told her that the United States Sentencing Guidelines, though advisory in nature, contain provisions which allow a criminal defendant to claim acceptance of responsibility; however, Alig also informed Nobles the decision to accept this claim was within the judge's discretion, and he could make no promises or confirm whether she would receive credit for acceptance of responsibility. Alig further informed Nobles he did not know what sentence she faced and that, if she were lying to him or had knowledge of another person's involvement in the theft, the judge would take these facts into consideration. Alig prepared a statement based on the information Nobles provided him during the second interview. Nobles and her father reviewed the statement. After telling Alig the statement was "full and complete and accurate to the best of her knowledge" and having the opportunity to make changes or corrections on the statement, Nobles and her father signed this statement. (Tr. at 12.) Significantly, Nobles testified she told the truth to Agent Alig because it "was the right thing to do", and nobody threatened or coerced her to tell the truth. (Tr. at 25.) Nobles' confession is not subject to suppression, as it was given voluntarily.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Nobles' Motion to Suppress (Doc. No. 15) be **DENIED**. The Government should be entitled to use Nobles' statements as evidence during the course of the trial in this case.

**SO REPORTED** and **RECOMMENDED**, this 14th day of May, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE